578

## WHITE THUNDER v. HUNTER, Warden.

### No. 3094.

Circuit Court of Appeals, Tenth Circuit.

May 4, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1579.

Charles J. Kelly, of Denver, Colo., for appellant.

Eugene W. Davis, Asst. U. S. Atty., of Topeka, Kan., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On June 17, 1939, appellant, a Sioux Indian, was indicted, tried and convicted in the United States District Court of South Dakota, for rape of an Indian girl within the limits of an Indian Reservation, in violation of 18 U.S.C.A. § 549. No appeal was taken from the conviction and sentence of ten years.

On December 24, 1942, appellant filed his petition for a writ of habeas corpus in the United States District Court for the District of Kansas, alleging as one of the grounds for his release that the Assistant United States Attorney and his own attorney had conspired to prevent him from obtaining witnesses who would have testified that he was not within the state of South Dakota on the date the crime is alleged to have been committed. Affidavits of two witnesses, tending to support this allegation, were made a part of the record, and petitioner applied to the court for an order authorizing the taking of depositions at the Government's expense. The trial court denied the application on the grounds that if taken, the evidence would be immaterial to the issues. Upon petitioner's testimony and the record adduced, the trial court found that petitioner had failed to sustain the allegations of his petition and dismissed the writ.

On appeal we remanded the case (141 F.2d 500) with directions to permit the petitioner to take the depositions of the witnesses named in his application, and to determine whether in the light of this testimony the petitioner was entitled to release under the doctrine of Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, which holds that a petition for a writ of habeas corpus alleging that the petitioner is imprisoned upon a conviction obtained through the suppression of evidence favorable to the defendant by the prosecuting officers, alleges a deprivation of rights guaranteed by the Federal Constitution, and a denial of the petition for the writ without a determination of the verity of these allegations is reversible error.

At a regular hearing on remand, pursuant to the mandate, the attorneys for both petitioner and respondent, advised the court that they were unable to obtain the depositions of some of the witnesses named in petitioner's original application, and without objection from the petitioner or his attorney, the matter was presented to the trial court upon the testimony of the petitioner, and the depositions of the Assistant United States Attorney, who prosecuted the case, the sentencing judge, the petitioner's trial attorney, and his mother-in-law.

Petitioner testified substantially as he did at the original hearing to the effect that he could not personally remember his whereabouts on the night the crime is alleged to have been committed, but that his mother said he was at home because on that evening they brought his sister Charlotte Thin Elk home from the hospital, while his wife insisted that they were visiting her people in Valentine, Nebraska on that night. That on the day before the trial, which resulted in his conviction, he explained these conflicting versions of his witnesses to his attorney and suggested that they secure the

presence of Charlotte Thin Elk and Elmer Jones (a mechanic in petitioner's garage) to reconcile the conflict among his witnesses. That his attorney advised the Assistant United States Attorney prosecuting the case of their desire to have these two additional witnesses subpoenaed at Government expense. He was told that the United States Marshal could not make the trip to the Reservation, where the witnesses lived, that day but he would call the Indian agency and have them appear. That when the case was called for trial next morning, and the witnesses were not available, he was told by the Assistant United States Attorney and assured by his own attorney that they would be available when needed in the progress of the trial. The petitioner further testified that when the witnesses did not appear on the next day he accepted his mother's recollection of his whereabouts on the evening of December 24, and accordingly he, his mother, and his wife all testified that he was at home on the evening of December 24, when the crime is alleged to have been committed, because that was the night the sister was brought home from the hospital. In rebuttal the Government introduced the hospital records to show that his sister was not released from the hospital until December 25, thus impeaching the testimony of petitioner and his witnesses and completely destroying his defense. Appellant further testified that approximately ten months after he was convicted and sentenced, he learned that the two witnesses whose attendance he sought to obtain had never been notified to appear as promised, and that he was thereby deprived of his constitutional rights by the suppression of evidence favorable to him in the trial of the case.

At the hearing on remand the petitioner's mother-in-law was permitted to testify that petitioner and his wife had Christmas dinner at her home on December 24, and that evening they "went to the movie" in Valentine, Nebraska. She fixed the date and the event because she remembered that Elmer Jones, the mechanic at petitioner's garage, wanted to go home on Christmas day and petitioner had to return home late that night so he could be at the garage during Jones' absence.

The sentencing judge testified to the effect that petitioner's attorney informed him that there were two additional witnesses needed for the defense, but they had no money to defray the expenses of compelling their attendance. That he instructed him to talk to the United States Attorney and if the testimony was material the Government would subpoena the witnesses; that later petitioner's attorney and the Assistant United States Attorney informed him that since the witnesses would testify as other witnesses already present, they had agreed that their testimony "would be cumulative and wholly unnecessary."

The prosecuting attorney testified that he agreed with the attorney for petitioner to have the witnesses available when needed, but that he was later informed it would not be necessary to request the attendance of the witnesses because other witnesses were going to testify as to petitioner's whereabouts on December 24, and the testimony of these two witnesses would be cumulative, and that he was not thereafter asked to subpoena witnesses or to otherwise require their attendance. He further testified that petitioner was ably represented by his own attorney throughout the trial of the case.

By agreement, petitioner's trial attorney, Gale B. Wyman, testified by submitted interrogatories. He stated that he was employed by petitioner to represent him for the alleged offense. That on the second or third day of the trial petitioner asked to have two additional witnesses subpoenaed; that he requested the United States Attorney to subpoena these witnesses at Government expense, and he was informed that they would be available when needed. He further stated that the purpose of requesting the testimony of the two witnesses was to corroborate the testimony of petitioner's mother and other witnesses who testified in his behalf. He stated that he never formally withdrew his request to have the witnesses subpoenaed but that after the production of the hospital records "had completely exploded and impeached" the mother's testimony, he and the Assistant United States Attorney decided that the corroborative testimony of the additional witnesses would be unavailing.

The trial judge who considered the petition for the writ on remand found that the evidence wholly failed to establish any fraud or conspiracy on the part of the Assistant United States Attorney and petitioner's attorney to suppress evidence favorable to the defense of the petitioner on the trial of his case, and that he was therefore not denied his constitutional guar-

**580**

anties under the doctrine of Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214.

The findings of the learned trial judge are amply supported by the evidence and his judgment is affirmed.