KLEINFELD, Senior Circuit Judge,
dissenting:
Gantt and Smith did not get a fair trial. We therefore caused their convictions to be vacated. The evidence against them was weak, so when one of the prosecutor’s three main witnesses changed his story in the middle of Gantt’s second trial, the prosecutor dismissed. Both are now free, and further prosecution is barred. Their guilt or innocence, and the fairness of their first criminal trial, are no longer before us.
What we have before us are their civil lawsuits against the two police officers who instigated the prosecution. The trial judge let the fabrication of evidence claim get to the jury, and gave some arguably confusing or erroneous instructions. Any such trial error, though, was harmless, because plaintiffs lacked a prima facie case.
That is not to suggest that Gantt and Smith were treated fairly in the criminal proceedings, or that they committed the murder. From all we can tell from the record, the two police detectives thought Gantt and Smith had murdered Kalpesh Vardhan, and did all they could, rightly and wrongly, to get them convicted for it. The evidence against Gantt and Smith, though, was very thin, and, whatever the police detectives thought, the prosecutor did not think he could prove murder once a key witness changed his story. One of the three witnesses, the accountant, was shaky on the identifications. The second, the one who changed his story in the middle of the second trial, was a thief in the garage to steal car stereos. He was not very credible, both because he was a thief, and because (though the prosecutors and police hid this from defense counsel) he probably had a grudge against Gantt. The third witness, the parking garage attendant, seems to me to be as supportive of the defense as of the prosecution. On the one hand, he was the best witness for putting Gantt and Smith in the garage at the right time, but on the other hand, their parking garage ticket put them there for what sounds like too short a time to locate, rob, and kill the victim. The only physical evidence was a matchbook Gantt had from an Indian restaurant, used by the prosecution to suggest that the non-Indian defendants took it from the ethnically Indian victim. The matchbook turned out to be a false lead because no one could establish that the Indian victim had ever been to the restaurant. The prosecution hid from the defense in the first trial the evidence that it was a false lead.
But the thinness of the evidence for murder does not establish fabrication of evidence, the theory the majority accepts. The tort theory would be, basically, that the prosecutors and police knew Gantt and Smith were innocent and prosecuted them anyway, and created false evidence with which to do it. Gantt and Smith failed to establish a prima facie case for fabrication of evidence.
Any inadequacy in the fabrication of evidence jury instruction was harmless, because the fabrication claim should not have gone to the jury at all. The constitutional violation claimed is that the police denied due process of law to Gantt and Smith by fabricating evidence. The supposedly fabricated evidence was the car stereo thief s identification. “Fabrication” means creating something in order to deceive.[1] The interrogation techniques used on Rosemond, the car stereo thief, may have vio *711 lated his rights, but that is not enough to establish that Gantt’s and Smith’s rights were violated. There was no evidence that the police exerted their pressure on Rosemond in order to make him testify to what the police believed to be false.
Had one of the policemen gone to an Indian restaurant, obtained a matchbook, and planted it in Gantt’s pocket, in order to tie him to the ethnically Indian victim, that would be fabrication of evidence. Or had the car stereo thief told the police that Gantt and Smith were not the men he saw, and they told him, “testify that he was, or we’ll frame you for the murder,” that would be fabrication of evidence. The due process violation consists, essentially, of creating false evidence to frame someone for a crime.
We spoke to what “fabrication of evidence” means in Devereaux v. Abbey,[2] an en bane case arising out of the Wenatchee “sexual abuse ‘witch hunt’ in which 43 adults were charged with over 29,000 counts of sexual molestation.”[3] We held that “there is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government.”[4] We deemed such fabrication comparable to knowing use of perjured testimony, the subject of the Supreme Court decision in Pyle v. Kansas.[5]
Yet the “fabrication” claim was unsuccessful as a matter of law even in the Wenatchee witch hunt. We held that, even though the lengthily interrogated children who denied having been sexually molested were pressured for hours until they changed their stories to what the investigating detective and social workers wanted them to say, the victim of the false charges “ha[d] not adduced or pointed to any evidence in the record to support” a fabrication claim.[6] He would have had to show either that the defendants continued investigating him even though they “knew or should have known that he was innocent,” or that their techniques “were so coercive and abusive that they knew or should have known that those techniques would yield false information.”[7] We held that the “critical element” of the “coercive and abusive” claim was that the defendants “knew or should have known that they were eliciting false accusations.”[8] We held that improper investigation “is one thing, intentionally fabricating false evidence is quite another.”[9] Even pressuring child witnesses for long periods of time to change their stories was not enough to get past summary judgment, because the victim of the false charges lacked evidence that the investigators knew or should have known that he “was innocent,” or that their improper techniques “would yield false information.”[10]
Under Devereaux, pressuring the car stereo thief to implicate Gantt and Smith did not entitle them to trial, much less setting aside a jury verdict for fabrication of evidence, because the police did not know (nor do we) that they were innocent, or that the interrogation techniques would yield a false identification. As for the *712 suggestion that if he could not identify Gantt and Smith as the perpetrators, they would “put it on” him, they did not know that Gantt, Smith, or the car stereo thief were innocent, so the coercive threat is not “fabrication” under Devereaux.
In Gantt’s and Smith’s case, there was no witch hunt. There is no particular reason to think that Gantt and Smith are innocent, much less that the police knew they were. There is no showing that the police believed the identification the car stereo thief made was false. He himself has not claimed that he lied twenty years ago, just that he can no longer remember and had not been wearing his glasses. We held in the Wenatchee witch hunt cases that the plaintiffs were not entitled to get to trial on their fabrication of evidence cases.[11] A fortiori, the far less coercive questioning and the lack of any reason to infer a frameup of an innocent man did not entitle Gantt and Smith to put their fabrication case before a jury. Here the plaintiffs were mistakenly permitted to try their cases, and the jury returned verdicts that a correct application of law would have compelled regardless of their verdicts. The fabrication of evidence claim is no more than a claim that false evidence, not known by the prosecution to be false, was used to convict them.
Because the fabrication of evidence claim should not have gone to trial at all, there being no prima facie case, we need not reach the questions about the correctness of the instructions. The case was put to the jury, which reached the legally required conclusion despite the poor instructions. The publication of today’s decision vastly expands the application of § 1983 to failed prosecutions, in quite a dangerous way. Now police pressure on a witness to tell what the police believe to be the truth arguably opens the door to a § 1983 claim. We should affirm on the fabrication of evidence claims, the basis for the reversal.

. The American Heritage Dictionary 484 (2d. coll. ed. 1985).

. Devereaux v. Abbey, 263 F.3d 1070 (9th Cir.2001) (enbanc).

. Id. at 1073.

. Id. at 1074-75.

. Id. at 1075 (discussing Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942)).

. Id.

. Id.

. Id. at 1077.

. Id.

.Id. at 1076.

. Devereaux v. Abbey, 263 F.3d 1070 (9th Cir.2001) (en banc); Cunningham v. City of Wenatchee, 345 F.3d 802 (9th Cir.2003).